# EXHIBIT 1

Case 1:22-cv-08713-JLR   Document 1-1   Filed 10/13/22   Page 2 of 21

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

NORMAN MAURICE ROWE, M.D., M.H.A., L.L.C.
and EAST COAST PLASTIC SURGERY, P.C.

Plaintiff(s),

- Against -

AETNA HEALTH AND LIFE INSURANCE
COMPANY,

Defendant(s).

Index No.

**SUMMONS**

Plaintiff's Address:
NORMAN MAURICE ROWE, M.D.,
M.H.A., L.L.C.

71 EAST 77TH ST
New York, NY 10075

Basis for Venue:
Defendant transacts business within
Bronx County

To the above named defendant:

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to
serve a copy of your answer, or, if the complaint is not served with this summons, to
serve a notice of appearance, on the Plaintiff's attorney within 20 days after the
service of this summons, exclusive of the day of service (or within 30 days after the
service is complete if this summons is not personally delivered to you within the
State of New York); and in case of your failure to appear or answer, judgment will
be taken against you in the amount of $296,023.85.

Dated:          September 9, 2022

Defendant's Address:
AETNA HEALTH AND LIFE INSURANCE
COMPANY

c/o Department of Financial Services
151 Farmington Avenue
Hartford, CT 06156

DocuSigned by:

*Michael Baglio*

**LEWIN & BAGLIO, LLP**
By: Michael Baglio, Esq.
Attorneys for the Plaintiff
1100 Shames Drive
Suite 100
Westbury, New York 11590
Tel:  (516) 307- 1777
Fax: (516) 307- 1770
L&B File No.: 2298.COM.07

.

Case 1:22-cv-08713-JLR   Document 1-1   Filed 10/13/22   Page 3 of 21

SUPREME COURT OF THE STATE OF NEW YORK      Index No.:
COUNTY OF BRONX
_____
NORMAN MAURICE ROWE, M.D., M.H.A., L.L.C. and      COMPLAINT
EAST COAST PLASTIC SURGERY, P.C.
Plaintiff(s),

- Against -

AETNA HEALTH AND LIFE INSURANCE COMPANY,
Defendant(s).
_____

Plaintiffs, NORMAN MAURICE ROWE, M.D., M.H.A., L.L.C. & EAST COAST PLASTIC SURGERY, P.C., alleges:

1) This is an amount of payment case because this is an action by an out-of-network health care provider to recover payment from an insurer. This action does not include any claims in which benefits were denied, nor does it challenge any coverage determinations..

2) This is not a right to payment case because the Defendant-insurer has already adjudicated the claim(s) at issue, has determined that Plaintiff's claim(s) were for covered medical services rendered to the relevant patient, and has issued payments-payments that were not what was offered to induce performance of the services at issue. And, that is the reason for this lawsuit.

3) JD[1], a consumer of the Defendant's product, required a medical procedure called bilateral breast reduction.

4) Prior to the service being rendered the insurer offered Plaintiff to reimburse the service at the 80 percent of the Reasonable and Customary rate. But after receiving the benefit of its bargain-bilateral breast reduction rendered to its

_____

[1] JD is an individual patient referred to solely by their initials to avoid disclosure of personally identifiable information.

L&B File No.: 2298.COM.07

Case 1:22-cv-08713-JLR   Document 1-1   Filed 10/13/22   Page 4 of 21

consumer-the insurer reneged by making payment that was not at 80 percent of the Reasonable and Customary rate. The payment was not what was offered, was late pursuant to NY statutory standards, and incomplete or unreasonable according to industry standards.

# JURISDICTION, VENUE, AND PARTIES

5) This Court has personal jurisdiction over the parties because Defendant AETNA HEALTH AND LIFE INSURANCE COMPANY,  (herein after " Aetna")is an insurance company licensed and authorized to do business in the State of New York; Aetna, violated New York Law while doing business in New York State.

6) Aetna transacts business in BRONX County.

7) NORMAN MAURICE ROWE, M.D., M.H.A., L.L.C. (Herein after Rowe LLC) is a Limited Liability Company  that provides health services in the State of New York. Rowe LLC is the entity through which Norman Rowe, M.D. does business.

8) EAST COAST PLASTIC SURGERY, P.C. (Herein after ECPS) is a Professional Corporation  that provides health services in the State of Secaucus, New Jersey. EAST COAST PLASTIC SURGERY, P.C. is the entity through which Charles Pierce, M.D. does business (Herein after Rowe LLC and ECPS are referred to collectively as Rowe LLC).

# FACTUAL ALLEGATIONS

## A.  Introduction to Managed Care

9) A health insurance product is a package of health insurance coverage benefits that are offered using a particular product network type within a service area.

Case 1:22-cv-08713-JLR   Document 1-1   Filed 10/13/22   Page 5 of 21

10) Health insurance plans, with respect to a product, are the pairing of the health insurance coverage benefits under the product with a particular cost sharing structure, provider network, and service area.

11) Many of Rowe LLC's patients are consumers of a health insurance products and use those products to arrange for and manage the costs of their medical treatment.

12) At all relevant times, "JD" was a consumer of a health insurance product sold by Aetna.

13) JD relied on an insurance product sold by Aetna to arrange for and manage the costs of their medical treatment.

### 1. Use of Network Status to Determine Reimbursement

14) The amount Aetna pays to medical providers is the result of a calculation. The minuend for that calculation is determined by a medical provider's network status.

15) Aetna determines a medical provider's network status by whether or not the provider has signed a Aetna network agreement. A provider who has joined the network has negotiated and agreed to accept a rate of payment for the services they will provide to consumers of Aetna's products and plans, which is called the in-network rate.

16) Rowe LLC intentionally refused to join any provider network organized by Aetna so that Rowe LLC is always free to negotiate payment for services they render to individual patients.

Case 1:22-cv-08713-JLR Document 1-1 Filed 10/13/22 Page 6 of 21

17) At all times relevant, Rowe LLC intentionally refused to join any insurer provider network organized by Aetna so that Rowe LLC could freely choose to whom they would render medical services.

18) Rowe LLC never agreed to be bound by the terms and conditions of JD's health insurance plan.

19) Because Rowe LLC refused to join a provider network Aetna treats Rowe LLC as an out-of-network provider.

20) Not all plans provide out-of-network benefits, but when they do Aetna determines the amount it will allow for a covered service to an out-of-network provider, this amount is called the allowed amount.

21) In the healthcare industry, usual, customary, and reasonable (UCR) is the charge for a service in a geographic area based on what providers in the area usually charge for the same or similar medical services. The 80th percentile of UCR is a percentile threshold recognized in the health insurance industry as a reasonable value for a medical service.

22) FAIRHealth data is a recognized in the healthcare industry as a reliable source for provider pricing and for determining UCR.

23) An insurer will typically disclose the allowed amount for a service rendered by an out-of-network provider as a percentage of UCR; this is typically called the out-of-network rate or the OON rate.

24) Indeed, New York Insurance Law §§ 3217-a(a)(19)(B) and 4324(a)(20)(B) and Public Health Law § 4408(1)(t)(ii) require health plans to disclose the amounts paid

Case 1:22-cv-08713-JLR   Document 1-1   Filed 10/13/22   Page 7 of 21

for out-of-network services as a percentage of UCR. Insurance Law §4324 states that the 80th percentile of providers' charge for a service in a geographic area is the usual and customary cost for that service.

25) Bilateral breast reduction was indicated for JD and JD desired Rowe LLC perform bilateral breast reduction.

26) Rowe LLC, however, was unwilling to risk non-payment to perform bilateral breast reduction on JD.

27) Therefore, on or about March 1, 2021, a Rowe LLC employee contacted Aetna and spoke to a/an Aetna employee.

28) Rowe LLC employee identified itself as an out-of-network provider, indicated Rowe LLC was willing to render bilateral breast reduction to JD.

29) During phone conversations between Rowe LLC's employees and Aetna's employees, Aetna employee represented that the total allowed amount for this service was based upon 80 percent of the Reasonable and Customary rate for covered services rendered to  JD. Aetna provided the following reference number for this conversation: 38252761-1000.

30) On or about March 1, 2021, Rowe LLC, submitted to Aetna medical records establishing the medical necessity of bilateral breast reduction for JD.

31) 80 percent of the Reasonable and Customary rate is an industry term which means Aetna would pay an amount equal to 80 percent of the Reasonable and Customary percentile threshold for that service in the geographic area where the

Case 1:22-cv-08713-JLR   Document 1-1   Filed 10/13/22   Page 8 of 21

services were rendered. In the healthcare industry, Reasonable and Customary is synonymous with UCR.

32) Via a telephone conversation on or about March 23, 2021, between Rowe LLC and Aetna, Aetna informed Rowe LLC that bilateral breast reduction rendered to JD would be a covered service; Aetna employee provided the following reference number 38252761-1000.

33) On April 28, 2021,  Rowe LLC accepted Aetna's offer by rendering bilateral breast reduction to JD.

34) Rowe LLC and ECPS submitted their billing to Aetna.

## B. Explanation of billing

35) Rowe LLC and ECPS billed Aetna a total of $300,000.00 for the services rendered to JD on 4/28/2021 indicating the services it rendered using industry standard billing codes, known as "CPT codes." Rowe LLC also substantiated the use of those CPT codes by including the relevant medical documentation with its billing.

36) It is an industry standard practice for Aetna to rely upon the billing codes submitted by a medical provider to determine the amount Aetna would pay.

37) Indeed, Rowe LLC attested to the accuracy of its claims.

38) Rowe LLC billed Aetna $150,000.00 for the services Norman Rowe, M.D. rendered. Aetna adjudicated these claims and determined that the claims were for covered services rendered to JD because Aetna paid  $3,664.54 for the services Norman Rowe, M.D. rendered.  With its payment to Rowe LLC for Dr Rowe's services Aetna said in sum and substance "We determine the recognized charge

Case 1:22-cv-08713-JLR   Document 1-1   Filed 10/13/22   Page 9 of 21

based on the geographic area, the member's plan and we calculate it based on either: The FAIR Health percentile or The plan's nonparticipating fee schedule."

39) ECPS billed Aetna $150,000.00 for the services Charles Pierce, M.D. rendered. Aetna adjudicated these claims and determined that the claims were for covered services because Aetna paid $ 311.61 for the services Charles Pierce, M.D. rendered. with its payment to ECPS for Dr Pierce's services Aetna said in sum and substance, "Member's plan allows up to 150% of the Medicare Allowable Rate for charges covered by their plan."

40) Aetna therefore claimed different reimbursement methodologies for the same services in the same claim.

## C. Explanation of monies owed

41) Aetna did not do what it was required to do.

42) Aetna accepted Rowe LLC's performance.

43) Aetna did deny the claim because Rowe LLC incorrectly performed bilateral breast reduction.

44) Aetna did not deny the claim because the services Rowe LLC billed were not covered.

45) Aetna did not deny the claim because there was a reduction in JD's benefits such that Rowe LLC was not entitled to further payment.

46) Aetna did not deny the claim because another insurer or corporation or organization was liable for all or part of the bill.

Case 1:22-cv-08713-JLR Document 1-1 Filed 10/13/22 Page 10 of 21

47) Instead of denying the claim, Aetna adjudicated Rowe LLC's claim, determined that bilateral breast reduction was covered and intentionally issued a payment, which was late and unreasonable.

### 1. Aetna's automated claims processing results in underpaid claims

48) Aetna has, as is common in the health insurance industry, largely automated its claims adjudication process.

49) Aetna has designed and implemented its automated claims adjudication process to ensure that claims for payment received by Aetna for all services rendered by any out-of-network providers are intentionally underpaid.

50) Aetna intentionally underpays out-of-network services to artificially reduce gross costs for medical services and increase its profits.

51) Every dollar that Aetna was obligated to pay that it didn't pay was a dollar that was counted directly to profits. While underpayment serves as a windfall for Aetna, being misled into providing medical services leaves the medical provider with a broken promise and the legal bills associated with attempting to be made whole again.

52) When Aetna processes the claims it receives it relies on the information reflected in the claim itself, and particularly the CPT code, to determine the date of service, the service provided to the consumer, and the medical providers network status.

L&B File No.: 2298.COM.07

Case 1:22-cv-08713-JLR   Document 1-1   Filed 10/13/22   Page 11 of 21

53) CPT codes are among the most important pieces of information included in a claim to Aetna, and a primary determinant of the amount Aetna will ultimately pay.

54) The type and degree of care indicated by the CPT code(s) included in a claim is a primary determinant of what Aetna will pay on the claim.

55) Aetna intentionally issues improper and reduced payment for services rendered by out-of-network providers.

56) The automated application of industry standard limitations on reimbursement means that Aetna routinely improperly applies limitations on reimbursement.  The improper application of limitations on reimbursement improperly reduces the amount of Aetna's payment

57) The delta between what Aetna paid on the claim identified in the Complaint and what Aetna should have paid is so substantial it foreclose the possibility that Aetna merely made a mistake.

58) The amount paid to Rowe LLC by Aetna $3,976.15 is not a reasonable value for bilateral breast reduction because it is not consistent with the prevailing and customary rates paid for bilateral breast reduction; as a result Rowe LLC suffered damages.

59) Aetna did not use the Reasonable and Customary rate to calculate the payment for bilateral breast reduction, therefore, Aetna incorrectly calculated its payment to Rowe LLC; as a result Rowe LLC suffered damages.

L&B File No.: 2298.COM.07

Case 1:22-cv-08713-JLR   Document 1-1   Filed 10/13/22   Page 12 of 21

60) Aetna intentionally incorrectly calculated 80 percent of the Reasonable and Customary rate resulting in an underpayment to Rowe LLC for bilateral breast reduction; as a results Rowe LLC suffered damages.

61) Aetna did not properly apply industry coding standards for determining any recognized limitations on reimbursement for bilateral breast reduction, therefore, Aetna incorrectly calculated its payment to Rowe LLC; as a result Rowe LLC suffered damages.

## FIRST CAUSE OF ACTION- BREACH OF CONTRACT

62) Rowe LLC repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

63) On or about March 1, 2021, Aetna verbally offered to pay 80 percent of the Reasonable and Customary rate for covered medical services rendered to JD.

64) On or about March 23, 2021, Aetna verbally offered to pay 80 percent of the Reasonable and Customary rate for covered medical services rendered to JD.

65) On or about April 28, 2021, Rowe LLC accepted Aetna's offer by rendering bilateral breast reduction to JD and submitted its billing to Aetna.

66) Aetna accepted Rowe LLC's performance.

67) Aetna adjudicated Rowe LLC's claim, determined the services were covered and issued a payment.

68) Aetna has failed and refuses, however, to pay Rowe LLC an amount equal to 80 percent of the Reasonable and Customary rate for the services as agreed.

69) Aetna has refused to pay the balance after being demanded to do so by Rowe LLC.

70) Aetna has not treated Rowe LLC fairly and has acted in bad faith.

71) As a result of Aetna's failure to perform under their agreement Rowe LLC has suffered damages.

## SECOND CAUSE OF ACTION UNJUST ENRICHMENT

72) Rowe LLC repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

73) Aetna induced Rowe LLC to render bilateral breast reduction to JD by offering to pay for bilateral breast reduction at the 80 percent of the Reasonable and Customary rate.

74) Rowe LLC conferred a benefit upon Aetna under circumstances where Aetna knew or should have known that Rowe LLC expected to be reasonably compensated for the benefit conferred according to usual and customary prevailing rates for bilateral breast reduction, the services rendered to JD.

75) Aetna received the benefit of its bargain, i.e., Rowe LLC rendering bilateral breast reduction to JD.

76) Rowe LLC would not have otherwise provided the medical services without Aetna's agreement to pay 80 percent of the Reasonable and Customary rate.

L&B File No.: 2298.COM.07

INDEX NO. 813372/2022E
RECEIVED NYSCEF: 09/12/2022

Case 1:22-cv-08713-JLR   Document 1-1   Filed 10/13/22   Page 14 of 21

77) When Rowe LLC rendered bilateral breast reduction to JD Rowe LLC made it possible for Aetna to fulfill its contractual obligation to manage JD costs for medically necessary services.

78) Relying on Aetna's offer of payment at 80 percent of the Reasonable and Customary rate, Rowe LLC forbore from collecting payment in full from JD prior to rendering bilateral breast reduction.

79) If Aetna did not offer to pay 80 percent of the Reasonable and Customary rate then  JD would not have received bilateral breast reduction from Rowe LLC for the same out-of-pocket costs.

80) The additional benefits conferred by Rowe LLC when Rowe LLC agreed to render bilateral breast reduction based on Aetna's promise of payment included JD's perception, valid or otherwise, that Aetna facilitated JD receiving bilateral breast reduction from Rowe LLC; the esteem and the expectancy of JD's continued customer patronage is called good will and it has a value to Aetna.

81) Under the circumstances, it would be unfair to permit Aetna to retain the benefits conferred upon it without Aetna paying a reasonable value to Rowe LLC.

## THIRD CAUSE OF ACTION- PROMISSORY ESTOPPEL

82) Rowe LLC repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

L&B File No.: 2298.COM.07

83) Aetna made a clear and unambiguous promise to pay 80 percent of the Reasonable and Customary rate for bilateral breast reduction rendered to JD and should have expected that Rowe LLC would rely upon that promise.

84) Aetna should have expected Rowe LLC to rely upon its promise because, among other reasons, Aetna knew that Rowe LLC was treating and it made a promise on March 23, 2021, to issue payment for bilateral breast reduction at the 80 percent of the Reasonable and Customary rate.

85) Aetna should have expected Rowe LLC to rely upon its promise because, among other reasons, Aetna issued numerous payments to Rowe LLC for the same healthcare services rendered by Rowe LLC at higher percentage of the billed amount under the same or similar circumstances.

86) Rowe LLC relied on Aetna's promise to its detriment, causing substantial damages equal to the reasonable value of the medical services provided by Rowe LLC.

## FOURTH CAUSE OF ACTION— VIOLATION OF NEW YORK'S PROMPT PAY LAW

87) Rowe LLC repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

88) Pursuant to their agreement and within 120 days of the date the services were rendered to JD, Rowe LLC submitted its claim to Aetna.

Case 1:22-cv-08713-JLR Document 1-1 Filed 10/13/22 Page 16 of 21

89) Aetna did not issue payment of the undisputed amount within 45 days of the date of service because the payment it issued was unreasonable based upon reimbursement standards in the industry,

90) Aetna did not object to reimbursement or request further information from Rowe LLC regarding Rowe LLC's billing within forty-five (45) days of receipt of the claim.

91) Rowe LLC is entitled to payment of $296,023.85 PLUS interest at the rate of ONE PERCENT (1%) per month computed from THIRTY (30) days after the date the claim was submitted to the Aetna until the amount due is paid in full, pursuant to <u>Insurance Law § 3224-a.</u>

L&B File No.: 2298.COM.07

Case 1:22-cv-08713-JLR   Document 1-1   Filed 10/13/22   Page 17 of 21

92)**WHEREFORE**, NORMAN MAURICE ROWE, M.D., M.H.A., L.L.C. & EAST COAST PLASTIC SURGERY, P.C. demands judgment in the amount of $296,023.85 together with statutory interest; or in the alternative judgment in the amount of $176,023.85, and pre-judgment interest, and court costs together with granting such other and further relief as the Court may deem just and proper.

**LEWIN & BAGLIO, LLP**
Attorneys for the Plaintiff
1100 Shames Drive
Suite 100
Westbury, New York 11590
Tel: (516) 307- 1777
Fax: (516) 307- 1770
L&B File No.: 2298.COM.07

L&B File No.: 2298.COM.07

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

Index No.:

NORMAN MAURICE ROWE, M.D., M.H.A., L.L.C. and
EAST COAST PLASTIC SURGERY, P.C.
                              Plaintiff(s),

VERIFICATION

- Against -

AETNA HEALTH AND LIFE INSURANCE COMPANY,
                              Defendant(s).

I, _____ being duly sworn, deposes and says:

I am an officer of EAST COAST PLASTIC SURGERY, P.C., the plaintiff in the

above-entitled action. I have read the foregoing complaint and know the contents

thereof. The same are true to my knowledge, except as to matters therein stated to

be alleged on information and belief and as to those matters I believe them to be

true.

Dated: September 9, 2022

Sworn to before me this ___ day of _____, 20___

MICHELE B SAGURTON
Notary Public, State of New Jersey
Comm. # 50066395
My Commission Expires 8/18/2027

Notary Public

L&B File No.: 2298.COM.07

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

Index No.:

NORMAN MAURICE ROWE, M.D., M.H.A., L.L.C. and
EAST COAST PLASTIC SURGERY, P.C.
                                        Plaintiff(s),

VERIFICATION

- Against -

AETNA HEALTH AND LIFE INSURANCE COMPANY,
                                        Defendant(s).

I, _MIA SCHETZ_ being duly sworn, deposes and says:

I am an officer of NORMAN MAURICE ROWE, M.D., M.H.A., L.L.C., the plaintiff

in the above-entitled action. I have read the foregoing complaint and know the

contents thereof. The same are true to my knowledge, except as to matters therein

stated to be alleged on information and belief and as to those matters I believe them

to be true.

Dated: September 9, 2022

Sworn to before me this 9 day of _____

MICHELE B SAGURTON
Notary Public, State of New Jersey
Comm. # 50066395
My Commission Expires 8/18/2027

                    Notary Public

L&B File No.: 2298.COM.07

Case 1:22-cv-08713-JLR Document 1-1 Filed 10/13/22 Page 20 of 21

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

Index No.:

NORMAN MAURICE ROWE, M.D., M.H.A., L.L.C.
and EAST COAST PLASTIC SURGERY, P.C.

**AFFIRMATION**

Plaintiff(s),

- Against -

AETNA HEALTH AND LIFE INSURANCE
COMPANY,

Defendant(s).

STATE OF NEW YORK)
COUNTY OF NASSAU ) ss.

**ATTORNEYS VERIFICATION AND CERTIFICATION PURSUANT TO § 130-1:**

I, Michael Baglio, Esq., an attorney and counselor at law, duly admitted to practice in the Courts of the State of New York and a member with the law firm **LEWIN & BAGLIO, LLP,** attorneys for plaintiff herein, affirms the following to be true under penalties of perjury:

I have read the foregoing **COMPLAINT** and know the contents thereof, and upon information and belief, I believe the matters alleged therein to be true.

The reason this verification is made by deponent and not by plaintiff is that plaintiff resides in a county other than the one in which your deponent's office is maintained.

The source of your deponent's information and the grounds of my belief are communications, papers, reports and investigations contained in my file.

Dated: September 9, 2022
Westbury, New York

DocuSigned by:

*Michael Baglio*

0A1D48C14A73421...

By: Michael Baglio, Esq.

L&B File No.: 2298.COM.07

Case 1:22-cv-08713-JLR   Document 1-1   Filed 10/13/22   Page 21 of 21

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

NORMAN MAURICE ROWE, M.D., M.H.A., L.L.C. and
EAST COAST PLASTIC SURGERY, P.C.

                Plaintiff(s),

Index No.:

- Against -

AETNA HEALTH AND LIFE INSURANCE COMPANY,

                Defendant(s).

Pursuant to Section 130-1 of the rules of the chief administrator (22 NYCRR) I certify that
to the best of my knowledge, information and belief, Formed after an inquiry reasonable
under the circumstances, the within Summons and Verified Complaint are not frivolous.

*DocuSigned by:*

*Michael Baglio*

0A1D48C14A73421...

    By: Michael Baglio, Esq.

# SUMMONS AND COMPLAINT

### ATTORNEYS FOR THE PLAINTIFF

LEWIN & BAGLIO, LLP
1100 Shames Drive
Suite 100
Westbury, New York 11590
516-307-1777
L&B File No.: 2298.COM.07

To:

Attorney for defendant:
Service of a copy of the within SUMMONS AND COMPLAINT is hereby admitted.

Dated:               _____

                Attorney for Defendant

L&B File No.: 2298.COM.07