UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NORMAN MAURICE ROWE, M.D., M.H.A., L.L.C. and EAST COAST PLASTIC SURGERY, P.C.,

        Plaintiffs,

-against-

AETNA LIFE INSURANCE COMPANY,

        Defendant.

Case No. 1:22-cv-08713 (JLR) (OTW)

**OPINION AND ORDER**

---

JENNIFER L. ROCHON, United States District Judge:

This is one of many cases brought by medical providers Norman Maurice Rowe, M.D., M.H.A., L.L.C. ("Rowe") and East Coast Plastic Surgery, P.C. ("ECPS") (together, "Plaintiffs"), against Aetna Life Insurance Company ("Defendant" or "Aetna"), arising out of a payment dispute over a surgery. *See generally* Dkt. 1-1 ("Complaint"). Currently before the Court are Magistrate Judge Ona T. Wang's (1) January 13, 2025 report and recommendation that this action be dismissed with prejudice (the "R&R"), *see* Dkt. 54, and (2) January 14, 2025 order denying reconsideration of the R&R (the "Reconsideration Order"), *see* Dkt. 61. For the reasons that follow, the Court adopts Judge Wang's recommendations and findings and dismisses this case with prejudice.

## BACKGROUND

### I. Factual Background

The following facts are taken from Plaintiffs' Complaint and assumed to be true. Plaintiffs are not part of Aetna's healthcare provider network and are thus reimbursed at an out-of-network rate for providing covered medical services to patients with an eligible Aetna health-insurance plan. Compl. ¶¶ 17, 19. Aetna's in-network rate is contractually predetermined, whereas Aetna's out-of-network rate is capped at an "allowed amount" based

on a percentage of the usual, customary, and reasonable rate ("UCR") of what providers in the same geographic area charge for a given service. *Id.* ¶¶ 15, 20-24.

On or about March 1, 2021, Plaintiffs called Aetna to ascertain the rate at which they would be reimbursed for providing a medically necessary bilateral breast reduction to an Aetna customer. *Id.* ¶¶ 26-27, 30. During this call, an "Aetna employee represented that the total allowed amount for this service was based upon 80 percent of the [UCR] rate for covered services rendered to [the patient]." *Id.* ¶¶ 29, 31. The Complaint does not specify whether the parties discussed the details of the surgery, the price of the surgery, or related services to be rendered as part of the surgery. *See generally id.* On or about March 23, 2021, Aetna approved the surgery based on the patient's medical documentation, *id.* ¶¶ 30, 32, and on April 28, 2021, Plaintiffs performed the surgery, *id.* at ¶ 33. Subsequently, Plaintiffs submitted a bill to Aetna for $300,000 based upon billing codes for various services rendered during the surgery and supporting medical documentation. *Id.* ¶¶ 34-35. Aetna paid $3,664.54 to Rowe for the services Norman Rowe M.D. rendered, based on a purported UCR calculation, and $311.61 to ECPS for the services Charles Pierce M.D. rendered, based on 150% of the Medicare rate. *See id.* ¶¶ 22, 38-39. Plaintiffs contend that these payments amounted to less than 80 percent of the UCR for bilateral breast reduction. *See id.* ¶¶ 58-60. Plaintiffs also assert that "Aetna did not properly apply industry coding standards," *id.* ¶ 61, although the Complaint does not specify which billing codes were provided to Aetna or provide further detail as to how Aetna processed the billing codes, improperly or otherwise.

## II.   Procedural History

On September 12, 2022, Plaintiffs filed a Complaint in the Supreme Court of New York, County of Bronx, asserting claims against Aetna for breach of contract, unjust enrichment, promissory estoppel, and violation of New York's Prompt Pay Law, N.Y. Ins.

2

Law § 3224-a. *See* Compl. at 2, 11-15. Plaintiffs and their affiliated practices subsequently filed more than two dozen other lawsuits asserting similar claims against Aetna in state court, the U.S. District Court for the Southern District of New York, and the U.S. District Court for the Eastern District of New York. *See* Dkt. 70 at 1; Dkt. 67 at 2 & n.2. Aetna timely removed the instant case to this District on October 13, 2022, *see generally* Dkt. 1, and filed its answer on November 21, 2022, *see* Dkt. 9. On August 17, 2023, the Court referred the case to Magistrate Judge Wang for general pretrial management and to supervise discovery alongside several other *Rowe* cases that were filed in or removed to this District. *See* Dkt. 39.

### III. Related Litigation and Subsequent Developments

On December 11, 2023, Judge Rakoff issued a decision in *Rowe Plastic Surgery of New Jersey, L.L.C. v. Aetna Life Insurance Co.* (*Rowe I*), dismissing with prejudice the plaintiff-providers' amended complaint. *See generally* 705 F. Supp. 3d 194 (S.D.N.Y. 2023), *aff'd,* No. 23-8083, 2024 WL 4315128 (2d Cir. Sept. 27, 2024) (summary order). Although *Rowe I* involved a different patient, the complaints in both that case and the instant case center on a single phone call with an Aetna employee followed by a confirmation that Aetna approved the surgery as medically necessary. *Compare* Amended Complaint ¶ 20, *Rowe I*, 705 F. Supp. 3d 194 (No. 23-cv-08521), ECF No. 13 (alleging that Aetna employee "represented that it would reimburse the services rendered to [the patient] based upon 80% [of the UCR]"), *and id.* ¶¶ 23-24 (alleging that providers "submitted medical records to Aetna for an out-of-network review," after which "[a] bilateral breast reduction was approved for [a] date of service"), *with* Compl. ¶ 29 (alleging that "Aetna employee represented that the total allowed amount . . . was based upon 80 percent of the [UCR] for covered services rendered to [the patient]"), *and id.* ¶¶ 30, 32 (alleging that Plaintiffs "submitted to Aetna medical records establishing the medical necessity of bilateral breast reduction," after which "Aetna informed

3

[Plaintiffs] that bilateral breast reduction . . . would be a covered service"). Both *Rowe I* and the instant case involve claims for breach of contract, unjust enrichment, and promissory estoppel; however, in *Rowe I*, the providers asserted a fourth claim for fraudulent inducement, whereas in the instant case, they assert a fourth claim for violation of the Prompt Pay Law. *See Rowe I*, 705 F. Supp. 3d at 199; Compl. at 11-15.

In *Rowe I*, Judge Rakoff considered a transcript of the phone call between the providers and Aetna. 705 F. Supp. 3d at 200. Having reviewed the transcript, Judge Rakoff found that "[Aetna]'s employee was merely recounting [the patient's] scope of coverage and benefit rates," and concluded that "no reasonable person would understand the representation about the reimbursement rate to be an offer to pay." *Id.* at 203. Given the lack of an offer in the transcript or any other allegations of an offer in the complaint, Judge Rakoff dismissed the providers' breach-of-contract claim. *Id.* Judge Rakoff also dismissed the providers' promissory-estoppel claim because they failed to allege "a clear and unambiguous promise," *id.* at 203-04; dismissed the providers' unjust-enrichment claim because they failed to allege that the surgery conferred a benefit on Aetna or was performed at Aetna's request, *id.* at 204-05; and dismissed the providers' fraudulent-inducement claim because the amended complaint did not sufficiently allege any fraudulent statements, *id.* at 205. The providers subsequently appealed Judge Rakoff's decision, and on December 22, 2023, Judge Wang stayed discovery in the instant case and eleven other *Rowe* cases pending resolution of the appeal. *See* Dkts. 45, 46. On September 27, 2024, the Second Circuit affirmed Judge Rakoff's decision to dismiss the case. *See Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.* (*Rowe III*), 2024 WL 4315128, at *5.

On February 1, 2024, during the pendency of the Second Circuit appeal, Judge Cote issued a decision dismissing the complaint in another case brought by the instant Plaintiffs,

4

largely adopting Judge Rakoff's reasoning. *See Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.* (*Rowe II*), No. 23-cv-08529 (DLC), 2024 WL 382143, at *2 (S.D.N.Y. Feb. 1, 2024). Judge Cote denied Plaintiffs' request for leave to amend on futility grounds because Plaintiffs failed to "explain[] how the proposed amendment would cure any of the deficiencies in the [complaint's] four claims." *Id.* at *2. Judge Cote reasoned that "[e]ven if [Plaintiffs] could allege that the reimbursement methodology described in the telephone call was not the methodology used in the [patient's insurance] plan, this amendment would not state a breach of contract, promissory estoppel, unjust enrichment, or fraudulent inducement claim." *Id.* Judge Cote also expressed doubt that Plaintiffs' proposed amendment could satisfy Federal Rule of Civil Procedure ("Rule") 11. *See id.*

On December 9, 2024, following a conference with the parties, Judge Wang granted in part and denied in part Aetna's request for expedited motion practice. *See* Dkt. 52 at 3. In connection with Aetna's request, Judge Wang issued an order to show cause (the "OTSC") directing Plaintiffs to show cause in writing, no later than January 10, 2025, (1) why the instant case differed from *Rowe I* and should not be dismissed in light of the Second Circuit's decision in *Rowe III*, and (2) why the parties were not barred from seeking amendment in light of Judge Cote's decision in *Rowe II*. Dkt. 53.

### IV.    The R&R, the Reconsideration Order, and the Amendment Order

Plaintiffs did not respond to the OTSC by the deadline, and on January 13, 2025, Judge Wang issued the R&R recommending that the case be dismissed with prejudice. *See* Dkt. 54 at 1-2. The R&R provided that the parties had until January 27, 2025, to file objections. *Id.* at 2. After the R&R was docketed, Plaintiffs filed an untimely response to the OTSC, *see* Dkts. 55, 56, and a motion to amend their Complaint, *see* Dkt. 57. Plaintiffs also filed a letter motion requesting that Judge Wang grant them an extension to respond to the

5

OTSC and accept their untimely response, which was allegedly caused by a technical misunderstanding of the electronic case filing system and the District's local filing rules. *See* Dkt. 58. Aetna opposed Plaintiffs' requests. Dkt. 59.

In their untimely response to the OTSC, Plaintiffs first characterized the Second Circuit's decision in *Rowe III* as having affirmed the dismissal of "claims where a single phone call was deemed insufficient to establish a binding agreement." Dkt. 56 at 5. They briefly argued that their case should not be dismissed in light of the Second Circuit's decision because their proposed amended complaint (the "PAC") was based on "documented communications over several months that established mutual agreement on terms and established that Defendant's offer of payment expired on a date certain, thereby, making it a unilateral offer capable of acceptance." *Id.* Second, Plaintiffs characterized Judge Cote's decision dismissing their complaint in *Rowe II* as having been founded on the premise that "isolated instances of alleged misstatements did not meet the standards for an enforceable obligation or for a fraud claim." *Id.* at 7. They reasoned they should not be barred from seeking amendment in the instant case because their PAC outlined a more fulsome "course of communication between the parties" leading up to the surgery that "directly address these concerns." *Id.* at 8; *see id.* at 8-10.

On January 14, 2025, Judge Wang issued the Reconsideration Order, which denied Plaintiffs' request for an extension as moot in light of her R&R. *See* Dkt. 61 at 2-3. Instead of accepting Plaintiffs' untimely response, Judge Wang construed it as a motion to reconsider the R&R, which she denied, having found that Plaintiffs did "not put forth new facts or law that justif[ied] reconsideration." *Id.* at 3; *see id.* at 2.

On April 4, 2025, Judge Wang issued an order that denied Plaintiffs' motion for leave to amend (the "Amendment Order"). *See* Dkt. 70 at 3; Dkt. 70 ex. A at 7 (concluding that

"Plaintiffs did not exercise diligence in seeking amendment," "allowing amendment would prejudice Defendant," and "Plaintiffs . . . failed to show good cause (or, indeed, any cause) for amendment").

## STANDARD OF REVIEW

On review of a report and recommendation, a district court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). To accept "uncontested portions of a report and recommendation, 'a district court need only satisfy itself that there is no clear error on the face of the record.'" *Qlay Co. v. Owen*, No. 21-cv-01784 (JLR) (VF), 2024 WL 4769718, at *1 (S.D.N.Y. Nov. 13, 2024) (quoting *Gomez v. Brown*, 655 F. Supp. 2d 332, 341 (S.D.N.Y. 2009)). "A decision is 'clearly erroneous' when the reviewing Court is left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-cv-04394 (AJN), 2018 WL 1750595, at *21 (S.D.N.Y. Apr. 11, 2018)).

Under Rule 72, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "To the extent, however, that the party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 174 (S.D.N.Y. 2018), *aff'd*, 837 F. App'x 841 (2d Cir. 2021) (summary order). "Objections of this sort are frivolous, general and conclusory and would reduce the magistrate's work to something akin to a meaningless dress rehearsal." *Layne v. Kopp*, No. 21-cv-03989 (JLR), 2025 WL 869716, at *3 (S.D.N.Y. Mar. 20, 2025) (quoting *N.Y.C. Dist. Council of Carpenters Pension Fund v. Forde*, 341 F. Supp. 3d 334, 336 (S.D.N.Y. 2018)). "In addition, new arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and

indeed may not be deemed objections at all." *Irick v. Capra*, No. 23-cv-09123 (JLR) (JLC), 2024 WL 5039664, at *2 (S.D.N.Y. Dec. 9, 2024) (quoting *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020)).[1]

## DISCUSSION

### I. The R&R

The R&R recommends that the Complaint be dismissed with prejudice because Plaintiffs failed to respond to the OTSC that directed them to show cause (1) why the instant case "differ[s] from and should not be dismissed considering the Second Circuit's decision in *Rowe* [*III*]" and (2) why Plaintiffs were "not barred from seeking amendment in light of [*Rowe II*]." Dkt. 54 at 1; *see id.* at 2. Plaintiffs' objections that reference the R&R rely entirely on new allegations and claims asserted in their PAC, which was not presented to Judge Wang before she issued the R&R. *See, e.g.*, Dkt. 66 at 16 ("The R&R mischaracterizes the detailed allegations in the PAC."). Accordingly, the Court understands Plaintiffs' objections to be directed at the Reconsideration Order, not the R&R. Because Plaintiffs do not "specifically object" to any portion of the R&R, the standard for review is clear error. *Niles v. Wilshire Inv. Grp., LLC*, 859 F. Supp. 2d 308, 316 (E.D.N.Y. 2012).

Judge Wang did not clearly err in her R&R when she recommended that the Complaint be dismissed with prejudice because Plaintiffs did not file any response to her

---

[1] Plaintiffs' objections to the R&R and the Reconsideration Order were originally due on January 27 and January 28, 2025, respectively. *See* Dkt. 54 at 2; Dkt. 61 at 6. On January 23, 2025, Plaintiffs requested an extension of the deadline to submit objections to "Magistrate Judge Wang's R + R of January 14, 2025." Dkt. 64. The Court granted the request and instructed that "Plaintiffs' objections shall be due January 31, 2025." Dkt. 65. On January 31, 2025, Plaintiffs filed their combined objections to both the R&R and the Reconsideration Order. *See* Dkt. 66. Because Plaintiffs' extension request could arguably be read as pertaining to both the R&R and Reconsideration Order, and the Court's granting of the extension was broadly worded, the Court will treat Plaintiffs' objections to both orders as timely.

Order to Show Cause by the required deadline of January 10, 2025. However, even setting aside Plaintiffs' lack of a response, the Court agrees with Judge Wang's recommendation that the Complaint be dismissed with prejudice.

First, as to Plaintiffs' breach-of-contract claim, the Second Circuit concluded in *Rowe III* that the providers' "allegations fall short of the definiteness typically required to create an offer, such as details of the specific service and the price or an explicit undertaking of a duty," and "[a]bsent an offer, there can be no contract between the [p]roviders and Aetna." 2024 WL 4315128, at *3 (citing *Sokoloff v. Harriman Ests. Dev. Corp.*, 754 N.E.2d 184, 187-88 (N.Y. 2001)). Even though the Court does not have a transcript of the call as the courts did in *Rowe I* and *Rowe III*, Plaintiffs' Complaint in the instant case likewise lacks concrete factual detail indicative of an offer — Plaintiffs simply allege that Aetna "represented that the total allowed amount for [the surgery] was based upon 80 percent of [the UCR] for covered services rendered to [the patient]." Compl. ¶ 29. Plaintiffs do not allege that the parties discussed the details of the surgery, the services to be rendered as part of the surgery, or specific prices for those services, nor do Plaintiffs plead any facts to support an inference that Aetna explicitly undertook a duty to pay for the surgery at a specific rate or otherwise. Although Plaintiffs may have subjectively understood Aetna's generic recounting of the patient's benefits to constitute a unilateral offer to pay for the surgery, "[t]he parties' subjective intent is irrelevant." *Rowe I*, 705 F. Supp. 3d at 202 (first citing *Leonard v. Pepsico, Inc.*, 88 F. Supp. 2d 116, 127 (S.D.N.Y. 1999), *aff'd*, 210 F.3d 88 (2d Cir. 2000); and then citing *Rightnour v. Tiffany & Co.*, 239 F. Supp. 3d 744, 752 (S.D.N.Y. 2017)). "Absent an offer, there can be no contract" between the parties; accordingly, Plaintiffs do not state a claim for breach of contract. *Rowe III*, 2024 WL 4315128, at *3. By extension, Plaintiffs also fail to state a claim under the Prompt Pay Law, which "only applies to 'health care claims

9

submitted under *contracts or agreements*.'" *Seifts v. Consumer Health Sols. LLC*, 61 F. Supp. 3d 306, 325 (S.D.N.Y. 2014) (emphasis added) (quoting N.Y. Ins. Law § 3224-a) (dismissing Prompt Pay Law claim against defendant because plaintiffs did not allege contract with defendant).

Plaintiffs' cause of action for promissory estoppel also fails due to a lack of sufficiently detailed allegations about their call with Aetna. In *Rowe III*, the Second Circuit concluded that the providers' "allegations, *even with the benefit of the transcript's language*, do not plead a clear and unambiguous promise." 2024 WL 4315128, at *4 (emphasis added). As the court explained, "[a] promise is not 'clear and unambiguous' where the allegations are premised on an ambiguity or where the alleged promise is conditional upon further agreements or negotiations." *Id.* Here, Plaintiffs allege that Aetna verified the scope of the patient's out-of-network benefits during a single phone call and subsequently authorized the surgery as medically necessary, but the Complaint is devoid of any allegations that Aetna "promised to pay a particular amount" for the surgery or any particular services, let alone all of the services that could have been rendered as part of the surgery. *Rowe I*, 705 F. Supp. 3d at 204; *see also id.* at 203 ("[W]ithin the medical insurance industry, an insurer's verification is not the same as a promise to pay." (quoting *TML Recovery, LLC v. Humana, Inc.*, No. 18-cv-00462, 2019 WL 3208807, at *4 (C.D. Cal. Mar. 4, 2019))). Lastly, as to Plaintiffs' cause of action for unjust enrichment, the Second Circuit determined that the providers failed to state a claim because they "rel[ied] solely on allegations of an abstract and attenuated indirect benefit Aetna received," *Rowe III*, 2024 WL 4315128, at *3, and made "no allegations that Aetna requested their services," *id.* at *4. Here, too, Plaintiffs have not alleged any facts demonstrating or even supporting an inference that Aetna directly benefited from or asked Plaintiffs to perform the surgery.

Accordingly, the Court finds no clear error in the R&R's recommendation that Plaintiffs' claims should be dismissed with prejudice based on the analogous facts and underlying reasoning of *Rowe III*. Nor does the Court find clear error in Judge Wang's decision not to grant Plaintiffs leave to amend their Complaint *sua sponte*. Prior to the R&R's issuance, Plaintiffs had neither moved for leave to amend, nor presented their PAC to Judge Wang, nor responded to the OTSC that afforded them an opportunity to argue why amendment should be permitted. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("While leave to amend . . . is 'freely granted,' no court can be said to have erred in failing to grant a request that was not made." (citation omitted) (quoting Fed. R. Civ. P. 15(a))).

## II.  The Reconsideration Order

Moving then to the Reconsideration Order, Judge Wang declined to accept Plaintiffs' untimely response to her OTSC, instead construing it as a motion for reconsideration, which she denied due to Plaintiffs' failure "to present any new facts or controlling law that [she] did not previously consider" in issuing the R&R. Dkt. 61. at 5; *see id.* at 2-5. More specifically, Judge Wang held that the purported series of communications between the parties upon which Plaintiffs relied (and sought to add by amendment in their PAC) do not show that there was more than a single isolated instance where the parties allegedly discussed the rate of payment, which is insufficient to establish an agreement to pay a particular rate of payment. *Id.* at 4-5. Plaintiffs do not specifically object to Judge Wang's construal of their late filing as a motion for reconsideration, and the Court finds no clear error in that decision. Instead, Plaintiffs broadly object to Judge Wang's alleged "failure to credit all the allegations of the PAC" in declining to reconsider the R&R. Dkt. 66 at 6. Given the convoluted procedural posture of this case, in an abundance of caution, the Court will review *de novo* Judge Wang's decision

11

not to reconsider her recommendation to dismiss the Complaint with prejudice. As set forth below, the Court finds that Judge Wang properly denied reconsideration of the R&R.

"The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 377 (2d Cir.), *cert. denied*, 145 S. Ct. 279 (2024). "Accordingly, the standard for granting a motion for reconsideration is 'strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Id.* (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). "This strict standard is intended to 'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'" *Olson v. Major League Baseball*, 447 F. Supp. 3d 174, 177 (S.D.N.Y. 2020) (quoting *Carolco Pictures Inc. v. Sirota*, 700 F. Supp. 169, 170 (S.D.N.Y. 1988)), *aff'd*, 29 F.4th 59 (2d Cir. 2022)). As Judge Wang appropriately found, the allegations in Plaintiffs' PAC "do not resolve the issues" with their claims that she had identified in her OTSC in light of the earlier *Rowe* decisions, and "Plaintiffs failed to include any new or controlling law that the Court failed to consider that would compel a different outcome" and justify reconsideration of the R&R. Dkt. 61 at 5.

Plaintiffs argue that the Reconsideration Order overlooked a newly alleged "course of communications and conduct between Aetna and Plaintiffs" contained in their PAC that supports their claims. Dkt. 66 at 5. For example, Plaintiffs allege that in subsequent communications following the benefits-verification call, the parties agreed on the medical necessity of the surgery, the surgeons who would be performing the surgery, and the location of the surgery. Dkt. 66-2 ("PAC") ¶ 31. But as Judge Wang rightly observed in the

12

Reconsideration Order, the PAC "still alleges only a single isolated instance where the parties allegedly discussed the rate of payment," which was insufficient to establish Plaintiffs' claims in light of the other *Rowe* decisions in this District based on analogous facts. Dkt. 61 at 5. In arguing that "verification and preauthorization calls can and do constitute a promise to pay for purposes of contract creation," Plaintiffs point to a handful of out-of-Circuit decisions applying California contract law that have reached different conclusions, but those decisions are not controlling. Dkt. 66 at 13 (emphasis omitted); *see id.* at 14-15 (citing *In re Out of Network Substance Use Disorder Claims*, No. 19-cv-02075, 2020 WL 2114934 (C.D. Cal. Feb. 21, 2020); *Cal. Spine & Neurosurgery Inst. v. United Healthcare Servs., Inc.*, No. 18-cv-02867, 2018 WL 6074567 (C.D. Cal. June 28, 2018); *San Joaquin Gen. Hosp. v. United Healthcare Ins. Co.*, No. 16-cv-01904, 2017 WL 1093835 (E.D. Cal. Mar. 23, 2017)). Still absent from the PAC are any allegations that Aetna "made an offer or promise to pay a particular amount" or "that a service was provided to [Aetna] at [Aetna]'s request," *Rowe II*, 2024 WL 382143, at *2 (citing *Rowe I*, 705 F. Supp. 3d 194), which are necessary to state a claim for breach of contract, promissory estoppel, and unjust enrichment. Accordingly, the Court finds that Plaintiffs have not offered any new facts or controlling law "that might reasonably be expected to alter the conclusion reached by" Judge Wang that the case should be dismissed for failure to state a claim.[2]

In reaching this conclusion, the Court joins Judge Torres, who adopted Judge Wang's R&R and Reconsideration Order in another *Rowe* case with analogous facts and a nearly identical procedural posture. *See Rowe v. Aetna Health and Life Ins. Co.*, No. 22-cv-09427 (AT) (OTW), 2025 WL 618556, at *2 (S.D.N.Y. Feb. 25, 2025) ("Given the straightforward

---

[2] In their PAC, Plaintiffs attempt to plead new claims for fraudulent inducement and conversion that were not presented to Judge Wang prior to her issuing the R&R.

13

application of the [*Rowe III*] appeal to the nearly identical facts of this case, . . . and the fact that Plaintiffs failed to file a timely response to the [OTSC], the Court is not 'left with the definite and firm conviction' that Judge Wang committed 'a mistake' in recommending that Plaintiffs' complaint be dismissed with prejudice.'" (quoting *Easley v. Cromartie*, 532 U.S. 234, 242 (2001))); *cf. Rowe I*, 705 F. Supp. 3d at 205 (dismissing complaint with prejudice where providers "ha[d] not sought leave to amend nor indicated how any amendment could fix the deficiencies with the [complaint], most of which are legal deficiencies that no conceivable amendment could fix"); *Rowe II*, 2024 WL 382143, at *2 (dismissing complaint with prejudice where providers had not "attached a copy of their proposed amended pleading" nor "explained how the proposed amendment would cure any of the deficiencies in the [complaint]'s four claims").

Plaintiffs' motion to amend, which Judge Wang denied after she issued the R&R and Reconsideration Order, does not alter the Court's conclusion that this case should be dismissed with prejudice. *See* Dkts. 57, 70. In her order denying Plaintiffs' motion to amend, Judge Wang appropriately conducted an analysis balancing Rule 15 — which provides that "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2) — and Rule 16 — which requires courts to issue a scheduling order that "limit[s] the time to . . . amend the pleadings, . . . and file motions," *id.* 16(b)(3)(A), and "may be modified only for good cause," *id.* 16(b)(4). *See* Dkt. 70 ex. A at 3-7; *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("[D]espite the lenient standard of Rule 15(a), a . . . court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause."); *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) ("Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on

14

the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962))).

Judge Wang determined that Plaintiffs did not exercise diligence in seeking amendment. *See* Dkt. 70 ex. A at 4. She reasoned, among other things, that "Plaintiffs were on notice of the deficiencies in their complaint" since at least December 2023, when Judge Rakoff issued his decision, but moved for amendment only after she had issued the R&R. *Id.* at 5. Judge Wang further observed that "[e]ven the [OTSC], which explicitly directed Plaintiffs to address the futility of amendment, did not spur any timely action." *Id.*; *see also id.* at 5 & nn.5-6 (noting that Plaintiffs' "notice of motion" to amend did not reference a memorandum of law or "attach any documents, notwithstanding the reference to an 'attached' affirmation . . . and 'the exhibits thereto'"). Second, Judge Wang found that "amendment at this stage would prejudice [Aetna]." *Id.* at 7. She determined that "[a]llowing amendment, particularly where [Aetna] sought expedited motion practice, would only serve to unnecessarily prolong these cases" and "require [Aetna] to spend significant resources litigating the same issues across numerous cases." *Id.* at 6; *see also id.* at 7 (noting that "Plaintiffs (and counsel) have already had multiple bites at the apple" and "several cases have already been appealed"). The Court agrees with the analysis of Judge Wang.

In any case, the Court finds that amendment would be futile, and it "[i]t is well established that leave to amend a complaint need not be granted when amendment would be futile." *Hauptman v. Interactive Brokers, LLC*, 349 F. Supp. 3d 292, 295 (S.D.N.Y. 2018) (alteration in original) (quoting *Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018)). "Amendment to a pleading is futile if it could not withstand a motion to dismiss" for failure to state a claim, that is, if it does not "contain sufficient factual matter, accepted as true, to 'state a claim for

15

relief that is plausible on its face.'" *Id.* (first quoting *Long v. Perry*, 679 F. App'x 60, 63 (2d Cir. 2017) (summary order); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). For the reasons explained above, Plaintiffs have not demonstrated that the PAC would cure the deficiencies in their claims for breach of contract, unjust enrichment, and promissory estoppel. *See supra* at pp. 12-14. Plaintiffs have also included new claims for fraudulent inducement and conversion in their PAC, *see* PAC ¶¶ 88-100, 101-107, but the Court finds that these amendments would be futile as well.

To state a claim for fraudulent inducement, Plaintiffs must allege "(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by [Plaintiffs]; and (iv) resulting damages." *Rowe III*, 2024 WL 4315128, at *4 (quoting *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 62 (2d Cir. 2012)). Plaintiffs must also meet the heightened pleading requirements of Rule 9(b), which requires them to "(1) specify the statements that [they] contend[] were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lankau v. Luxoft Holding, Inc.*, 266 F. Supp. 3d 666, 674 (S.D.N.Y. 2017) (quoting *Emps.' Ret. Sys. v. Blanford*, 794 F.3d 297, 305 (2d Cir. 2015)); *see* Fed. R. Civ. P. 9(b) ("In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . .").

As relevant here, "a fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006). Accordingly, "general allegations that [Aetna] entered into a contract while lacking the intent to perform it are insufficient" to state a claim for fraudulent inducement. *Id.* (quoting *N.Y. Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 769 (N.Y. 1995)). Instead, "the material misrepresentation must be 'collateral to the contract it induced.'" *Rowe III*, 2024 WL

16

4315128, at *5 (quoting *Wall*, 471 F.3d at 416). Plaintiffs, however, have failed to make this showing. In their PAC, Plaintiffs allege that Aetna materially misrepresented the surgery's out-of-network reimbursement rate to induce Plaintiffs to perform the surgery, PAC ¶¶ 95-98, but in *Rowe III*, the Second Circuit found that this same overarching allegation was "insufficient to allege a misrepresentation 'collateral to' the allegations supporting their breach of contract claim,'" 2024 WL 4315128, at *5; *see id.* ("Instead, they have simply restated their breach of contract claim."). Although Plaintiffs may have slightly repackaged their allegations, they are essentially the same as those the Second Circuit found inadequate to support a fraudulent-inducement claim in *Rowe III*. *Compare* PAC ¶ 97 ("Aetna intentionally told [Plaintiffs] that its reimbursement rate was based upon [80 percent of the UCR]" when it "knew it was going to send [their] claim to its Pricing Vendor to suppress the reimbursement amount."), *with Rowe III*, 2024 WL 4315128, at *5 (finding insufficient Plaintiffs' allegation that "Aetna 'intentionally told' [Plaintiffs] that its 'reimbursement rate was based upon [80 percent of the UCR]' when [Aetna] 'knew its claims processing system did not allow for payment using 80% Reasonable and Customary'"). Accordingly, the PAC fails to state a claim for fraudulent inducement.

Plaintiffs' proposed conversion claim fails for similar reasons. In New York, "[t]he two elements of conversion are '(1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights.'" *Grgurev v. Licul*, 229 F. Supp. 3d 267, 285 (S.D.N.Y. 2017) (quoting *St. John's Univ. v. Bolton*, 757 F. Supp. 2d 144, 178 (E.D.N.Y. 2010)). "However, a claim for conversion cannot be sustained where the underlying facts are not sufficiently distinguishable from a breach of contract claim," and thus "[a] plaintiff must show 'acts that were unlawful or wrongful as opposed to mere violations of contractual rights.'" *Advanced Oxygen Therapy*

17

*Inc. v. Orthoserve Inc.*, 572 F. Supp. 3d 26, 38 (S.D.N.Y. 2021) (quoting *Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004)). Here, Plaintiffs' conversion claim is premised on their alleged "right to receive . . . payment from Aetna . . . for the services they rendered," PAC ¶¶ 102-103, which is indistinguishable from the facts underlying their breach-of-contract claim. Because Plaintiffs have alleged no more than a "mere violation[] of contractual rights," *Advanced Oxygen Therapy Inc.*, 572 F. Supp. 3d at 38, the PAC also fails to state a claim for conversion.

For these reasons, the Court finds that dismissal of the Complaint with prejudice is appropriate because the amended claims set forth in the PAC would be futile.

## CONCLUSION

For these reasons, the Court adopts the R&R and Reconsideration Order. Plaintiffs' complaint is hereby DIMISSED with prejudice for failure to state a claim. The Clerk of Court is respectfully directed to terminate all pending deadlines and motions and close the case.

Dated: June 6, 2025
New York, New York

SO ORDERED.

*Jennifer Rochon*
JENNIFER L. ROCHON
United States District Judge